**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 4 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

MARCUS G. HAHN,

        Defendant - Appellant.

No. 01-2301

---

NATIONAL ASSOCIATION OF
CRIMINAL DEFENSE LAWYERS,

        Amicus-Curiae.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.Ct. No. CR 00-1344 JP)**

---

David N. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the briefs), Office of the United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

Kari Converse (Marc H. Robert, with her on the briefs), Albuquerque, New Mexico, for Defendant-Appellant.

Norman R. Mueller, Rachel A. Bellis, Haddon, Morgan, Mueller, Jordan, Mackey and Foreman, P.C., Denver, Colorado; Daniel P. Blank, Assistant Federal Public Defender, San Francisco, California, filed an amicus curiae brief for the National Association of Criminal Defense Lawyers.

Before **TACHA**, Chief Circuit Judge, **SEYMOUR**, **EBEL**, **KELLY**, **HENRY**, **BRISCOE**, **LUCERO**, **MURPHY**, **HARTZ**, **O'BRIEN**, **McCONNELL**, and **TYMKOVICH**, Circuit Judges.

**PER CURIAM**

Defendant-Appellant Marcus G. Hahn was convicted of marijuana and firearms violations and sentenced to forty years' imprisonment. In a second prosecution for sexual-exploitation offenses, Mr. Hahn entered into a plea agreement in which he waived the right to appeal his sentence. The district court, finding that it lacked discretion to issue the sexual-exploitation sentence concurrently with the marijuana-and-firearms sentence, sentenced Mr. Hahn to twenty-four years to be served consecutively with the marijuana-and-firearms sentence. Mr. Hahn filed this appeal, arguing that the district court had discretion to sentence him to concurrent sentences. We hold that we have subject matter jurisdiction to hear this appeal; and, because the plea agreement constitutes an enforceable waiver of appellate rights, we DISMISS.

The Per Curiam opinion delivers the opinion of this Court with respect to Parts I, II, III.A, and III.B. A majority of this Court concurs in dismissing Mr. Hahn's appeal. Part III.C of the Per Curiam opinion is an opinion concurring in the result.

# I. BACKGROUND

We set this case for initial en banc review sua sponte to resolve an intra-Circuit split of authority concerning a matter of great public importance. *See* 28 U.S.C. § 46(c). The vast majority of federal criminal cases are resolved by plea agreements in which the defendant pleads guilty to some counts in exchange for concessions by the government. This system is an important tool in controlling the flood of criminal cases now inundating the federal courts. Many such plea agreements contain a waiver of the defendant's right to appeal the district court's sentence and the underlying conviction.

Given the importance of plea bargaining to the criminal justice system, we generally enforce plea agreements and their concomitant waivers of appellate rights. *See, e.g.*, *United States v. Hernandez*, 134 F.3d 1435, 1437 (10th Cir. 1998) ("A defendant's knowing and voluntary waiver of the statutory right to appeal his sentence is generally enforceable."). We do so, in large part, because public policy strongly supports such waivers as they benefit defendants, the government, and society at large. *See United States v. Elliott*, 264 F.3d 1171, 1174 (10th Cir. 2001). Nevertheless, we consistently hold that "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court." *Id.* at 1173 (quotation omitted).

These two competing goals—the need to enforce plea agreements and the

need to subject sentencing decisions to review for miscarriages of justice[1]—arguably have led us to inconsistent conclusions. Cognizant of the need to enforce plea agreements, we have, on occasion, stated that we lack jurisdiction to hear appeals when a defendant has entered into a valid plea agreement containing a waiver of appellate rights. *See, e.g., United States v. Rubio*, 231 F.3d 709, 711 & n.1 (10th Cir. 2000) (stating that this court "would certainly overreach [its] jurisdiction to entertain [an] appeal when the plea agreement deprived [the defendant] of the right to appeal"). In other instances, instead of conducting a jurisdictional analysis, we have enforced waivers of appellate rights pursuant to principles of contract law tempered by public policy concerns. *See, e.g., United States v. Black*, 201 F.3d 1296, 1301 (10th Cir. 2000) ("[A]greements waiving the right to appeal, like other contracts, are [evaluated] subject to certain public policy constraints."). With these overarching tensions in mind, we turn to the issues in this case.

## II. FACTS

On December 31, 1999, law enforcement officers executed a search warrant at Mr. Hahn's home and found a sophisticated marijuana-growing operation and twenty-two loaded firearms. The officers also seized videotapes depicting Mr. Hahn sexually abusing young boys who appeared to be sedated, as well as a

---

[1]We define the narrow parameters of miscarriages of justice below.

prescription for a "date rape" drug. Based on this evidence, the government charged Mr. Hahn in two separate federal cases, one involving the marijuana operation and related firearms possession and the other involving the sexual-exploitation offenses.

In the former prosecution, a jury found Mr. Hahn guilty of manufacturing marijuana in violation of 21 U.S.C. § 841, maintaining a place for the manufacture of marijuana in violation of 21 U.S.C. § 856, and two counts of possessing a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c). *United States v. Hahn*, 38 Fed. Appx. 553, 554 (10th Cir. 2002). Mr. Hahn received concurrent sentences totaling five years for the two substantive marijuana offenses, a ten-year sentence for the first firearm conviction, and a twenty-five-year sentence for the second firearm conviction. The district court imposed the two firearms-related sentences consecutively to each other and to the five-year total sentence for the substantive marijuana convictions. Thus, in the marijuana-and-firearms case, Mr. Hahn received a total of forty years' imprisonment, or 480 months, a sentence that this court affirmed on appeal. *Id.*

In the sexual-exploitation case, a grand jury indicted Mr. Hahn on seventeen counts relating to sexual exploitation and child pornography. He pleaded guilty to four counts of sexual exploitation of a minor in violation of 18

U.S.C. § 2251 and two counts of distributing a controlled substance to an individual with intent to commit a crime of violence in violation of 21 U.S.C. §§ 841(a)(1) and (b)(7). He also pleaded no contest to another count of distributing a controlled substance to an individual with intent to a commit a crime of violence. As part of the plea agreement, the government agreed to dismiss the remaining counts in exchange for Mr. Hahn's waiver of his right to appeal the sentence imposed, "except to the extent . . . that the Court may depart upwards from the applicable sentencing guideline range as determined by the Court."[2] The district court imposed concurrent sentences of 240 months for each

---

[2]The appeal waiver in the plea agreement executed by Mr. Hahn provides as follows:

        12.    The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed.

        a.    Acknowledging that, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statutes of conviction or the manner in which that sentence was determined on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement.

        b.    Acknowledging that, the defendant knowingly waives the right to appeal any sentence within the guideline range applicable to the statutes of conviction as determined by the Court after resolution of any objections by either party to the presentence report to be prepared in this case, and the defendant specifically agrees not to appeal the determination of the Court in resolving any contested sentencing factor. In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, that the Court may depart upwards from the applicable

(continued...)

of the counts to which Mr. Hahn pleaded guilty.  On the count to which Mr. Hahn

pleaded no contest, the court imposed a fifty-two-month sentence to run

consecutively to the other terms.  Thus, Mr. Hahn received a total sentence of 292

months' incarceration in the sexual-exploitation case.

Moreover, the district court ordered that Mr. Hahn serve the 292-month

sentence <u>consecutively</u> to the 480-month sentence previously imposed in the

marijuana-and-firearms case, resulting in a total prison sentence of over sixty-four

years.  Over Mr. Hahn's objections, the district court concluded that, under 18

U.S.C. § 924(c), it had "no alternative but to" impose the sentence consecutively.

On appeal, Mr. Hahn argues that the district court wrongly concluded that it

lacked discretion to impose a concurrent, rather than a consecutive, sentence.  He

maintains that, had the district court correctly understood its authority to impose a

concurrent sentence, it would have exercised that discretion to impose a sentence

twenty-four years shorter than he received.

### III.  DISCUSSION

We face three issues on appeal.  First, assuming that Mr. Hahn validly

waived his right to appeal, do we have subject matter jurisdiction to hear this

appeal?  Second, if we have subject matter jurisdiction, what appellate waiver

---

[2](...continued)
sentencing guideline range as determined by the Court.

enforcement analysis should we undertake?  Third, with the appropriate analysis at hand, how do we resolve this appeal?  We address these issues in turn.

A.    Subject Matter Jurisdiction

The parties agree, and we concur, that if Mr. Hahn's appellate waiver is unenforceable, we would have subject matter jurisdiction.  The parties, however, disagree about the effect an enforceable appellate waiver has on our subject matter jurisdiction.  The government asserts that a valid waiver of appellate rights deprives this Court of both statutory and constitutional subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (describing subject matter jurisdiction as "the courts' statutory or constitutional *power* to adjudicate the case").  Assuming for purposes of this jurisdictional discussion that the appellate waiver is enforceable, we disagree with the government and hold that we have subject matter jurisdiction to hear this appeal.

*1.    Statutory Subject Matter Jurisdiction*

We read Mr. Hahn's briefs to argue that the district court's failure to consider a concurrent sentence constitutes a sentence imposed in violation of law.  The government, therefore, contends that we lack statutory subject matter jurisdiction over this appeal because it could only arise under 18 U.S.C. § 3742(a)(1), which in the government's view does not apply in this case because the sentence was not imposed in violation of law.  *See* 18 U.S.C. § 3742(a)(1) ("A

defendant may file a notice of appeal . . . if the sentence . . . was imposed in violation of law"). We disagree.

The government's argument ignores the fact that the district court's entry of a sentence constitutes a final order, thereby establishing subject matter jurisdiction under 28 U.S.C. § 1291. *See* 28 U.S.C. § 1291 (providing that courts of appeals have subject matter jurisdiction over final orders of district courts). It is beyond dispute that a conviction and imposition of a sentence constitute a final judgment for § 1291 purposes. *Corey v. United States*, 375 U.S. 169, 174 (1963) ("Final judgment in a criminal case . . . means sentence. The sentence is the judgment.") (internal quotations omitted); *United States v. Moskow*, 588 F.2d 882, 889 (3d Cir. 1978) ("A judgment of sentence is a final order whether the sentence is imposed after a jury verdict or after the entry of a guilty plea.").

We regularly take subject matter jurisdiction pursuant to both § 3742(a) and § 1291 over cases in which a defendant, after entering into a plea agreement, seeks to challenge only the sentence imposed by the district court.[3] This practice is not unique to our Court.[4] We also note that "[p]rior to the passage of the

---

[3]*See, e.g., United States v. Hurlich*, 348 F.3d 1219, 1220 (10th Cir. 2003) (exercising jurisdiction under both § 1291 and § 3742(a) when the defendant challenged only his sentence); *United States v. Castro-Rocha*, 323 F.3d 846, 847 (10th Cir. 2003) (same); *United States v. Vasquez-Flores*, 265 F.3d 1122, 1123 (10th Cir. 2001) (same).

[4]*See, e.g., United States v. Vasquez*, 352 F.3d 1067, 1070 (6th Cir. 2003)
(continued...)

Sentencing Reform Act of 1984 . . . criminal appeals were taken pursuant to 28

U.S.C. § 1291[,]" *United States v. Ready*, 82 F.3d 551, 555 (2d Cir. 1996)

(internal citations and quotations omitted), and that the scope of § 1291

jurisdiction included an abuse of discretion review over sentencing errors.[5]

---

[4](...continued)
("This court has jurisdiction over the appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2) because Vasquez is appealing the district court's final sentence on the ground that it was imposed through an incorrect application of the guidelines."); *see also United States v. Warren*, 338 F.3d 258, 262 (3d Cir. 2003) (same); *United States v. Rhodes*, 330 F.3d 949, 952 (7th Cir. 2003) (same); *United States v. Berberich*, 254 F.3d 721, 722 (8th Cir. 2001) (same); *United States v. Hernandez-Valdovinos*, 352 F.3d 1243, 1245 (9th Cir. 2003) (same).

The Eleventh Circuit exercises jurisdiction over such cases solely under § 1291 because it does not read § 3742 to regulate subject matter jurisdiction. *United States v. Fossett*, 881 F.2d 976, 978-80 (11th Cir. 1989); *see also Arizona v. Manypenny*, 451 U.S. 232, 244-49 (1981) (distinguishing between an appellate court's subject matter jurisdiction and a party's right to file an appeal). This is a minority position, however. *See United States v. Graham*, 72 F.3d 352, 361 n.1 (3d Cir. 1995) (Nygaard, J., concurring) (listing cases).

The Supreme Court has yet to rule on whether § 3742 is jurisdictional, but recent dicta indicates that it may be. *See United States v. Ruiz*, 536 U.S. 622, 628 (2002).

[5] *See, e.g., Dorszynski v. United States*, 418 U.S. 424, 431 (1974) ("[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end."); *see also Koon v. United States*, 518 U.S. 81, 96-100 (1996) (stating that prior to the Sentencing Reform Act of 1984, courts of appeals reviewed sentencing for abuse of discretion); Ian Weinstein, *The Discontinuous Tradition of Sentencing Discretion:* Koon*'s Failure to Recognize the Reshaping of Judicial Discretion Under the Guidelines*, 79 B.U. L. Rev. 493, 499 (1999) ("In *Koon*, the Supreme Court followed longstanding practice in using 'discretion' to describe . . . the unreviewable, and essentially standardless, pre-[Sentencing Reform Act] exercise
(continued...)

Although taking subject matter jurisdiction under both § 3742(a) and § 1291 appears to be accepted practice, we note that it could appear to transgress the canon of statutory construction that instructs "where a specific provision conflicts with a general one, the specific governs." *Edmond v. United States*, 520 U.S. 651, 657 (1997). Strictly adhering to this canon would require courts to accept sentencing appeals exclusively under § 3742(a) because it is the more specific jurisdictional statute. For the reasons discussed below, we find another canon of statutory construction more applicable to this case.

The Supreme Court has

> repeatedly stated . . . that absent a clearly expressed congressional intention, repeals by implication are not favored. An implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter act covers the whole subject of the earlier one and is clearly intended as a substitute. *Branch v. Smith*, 538 U.S. 254, 273 (2003) (citations and quotations omitted).[6]

---

[5](...continued)
of sentencing power[.]").

[6] We note initially that § 3742(a) does not explicitly limit § 1291. Although § 3742(a)(1) manifests the congressional intent to codify pre-1984 jurisdiction over sentencing appeals—*see United States v. Colon*, 884 F.2d 1550, 1553 (2d Cir. 1989); S. Rep. No. 98-225 at 149-55 (1983), *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182, 3332—there is simply nothing in the text of § 3742 clearly expressing a congressional intent to limit the courts of appeals' § 1291 subject matter jurisdiction over sentencing appeals. Moreover, we are further persuaded by the fact that Congress has not employed in § 3472(a) the blunt language it has used elsewhere to limit jurisdiction. *See, e.g.*, 26 U.S.C. § 7429(f) ("Any determination made by a court under this section shall be final

(continued...)

To satisfy either of these tests for implicit repeal, "the intention of the legislature to repeal must be clear and manifest[.]" *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976) (internal quotations omitted). Moreover, silence in the legislative history is insufficient to support repeal by implication. *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 547-49 (1972) (holding that predecessor act to 28 U.S.C. § 1331 did not repeal the predecessor of 28 U.S.C. § 1343(3) by implication). This rule against implied repeal is particularly persuasive when repeal would affect a bedrock jurisdictional statute such as § 1291.[7]

We find that no grounds exist to hold that § 3742 implicitly repealed the pre-1984 scope of § 1291. Here, the fact that § 3742 is limited to criminal law makes it obvious that it does not cover the whole subject of § 1291, which applies to both civil and criminal appeals. Further, legislative history does not support a

---

[6](...continued)
and conclusive and shall not be reviewed by any other court."); 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding . . . . No action against the United States [or other specified persons] . . . shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.").

[7] Congress created intermediate courts of appeals in 1891. *See* Judiciary Act of 1891, 26 Stat. 826. The very act that created the courts of appeals conferred on them the power to review final judgments in almost all civil and criminal cases. 26 Stat. 828, § 6. Recodified and technically amended, § 6 of the 1891 Act exists essentially unchanged today as 28 U.S.C. § 1291. *See Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989) (tracing the lineage of § 1291 as it relates to Supreme Court jurisdiction to the Judiciary Act of 1789, 1 Stat. 73).

conclusion that § 1291 and § 3742 are irreconcilably conflicted. *See Radzanower*, 426 U.S. at 154. The legislative history of § 3742 does not discuss its impact on §1291. *See* S. Rep. No. 98-225 at 149-55 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3332. Indeed, although silent on repeal, the legislative history does manifest Congress's intent to expand appellate review over sentencing. *Id*. at 150-53; *see also Lynch*, 405 U.S. at 547-49 (stating that legislative history supporting congressional intent to expand federal jurisdiction weighs against implied repeal of a previously enacted jurisdictional statute). Therefore, far from supporting implied repeal, the legislative history shows that Congress intended the opposite result. As such, we hold that the legislative history of § 3742 does not support the conclusion that § 3742 and § 1291 are irreconcilably conflicted.

Therefore, even assuming that the government's § 3742(a)(1) analysis is correct, we find that we have statutory subject matter jurisdiction under § 1291 over sentencing appeals even when the defendant has waived his right to appeal in an enforceable plea agreement.

2. *Article III Subject Matter Jurisdiction*

In the alternative, the government argues that the entry of an enforceable appellate waiver renders this case moot, thus leaving us without the requisite case or controversy necessary for subject matter jurisdiction under Article III of the Federal Constitution. *See* U.S. Const. art. III, § 2, cl. 1; *Whitmore v. Arkansas*,

495 U.S. 149, 154-55 (1990) ("Article III, of course, gives the federal courts [subject matter] jurisdiction over only 'cases and controversies'"); *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."). The government argues that the entry of a valid plea agreement, like civil settlements, moots a criminal appeal. *See Tosco Corp. v. Hodel*, 804 F.2d 590, 592 (10th Cir. 1986) (per curiam) ("With limited exceptions, a settlement [in a civil case] involving all parties and all claims moots an action."). We disagree.

We have offered several different locutions for determining when a case is moot. *See, e.g., Hain v. Mullin*, 327 F.3d 1177, 1180 (10th Cir. 2003) ("A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.") (quotation omitted); *Smith v. Plati*, 258 F.3d 1167, 1179 (10th Cir. 2001) ("An issue becomes moot when it becomes impossible for the court to grant 'any effectual relief whatsoever' on that issue to a prevailing party.") (citations omitted). Further, the Supreme Court has held that "even the availability of a partial remedy is sufficient to prevent a case from being moot." *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (internal quotations omitted). Indeed, in *Sibron v. New York*, 392 U.S. 40 (1968), the Supreme Court permitted defendants, who conditionally pleaded guilty, to challenge their

-14-

convictions even after the completion of their sentences, because "the obvious fact of life [is] that most criminal convictions do in fact entail adverse collateral legal consequences. The mere possibility that this will be the case is enough to preserve a criminal case from ending ignominiously in the limbo of mootness." *Id.* at 55 (quotations omitted). Regardless of the phrase employed, this case is not moot because we have the power to grant a legally cognizable remedy requested by a party—namely, voiding the plea agreement.[8]

Our *Tosco* decision does not suggest a different result. In *Tosco*, the named parties to the case settled after filing their appeal. *Tosco*, 804 F.2d at 591. Despite this settlement, potential intervenors sought to file motions with this Court. *Id.* We held that the settlement between the parties mooted the case, depriving us of subject matter jurisdiction to "entertain the motions of the potential intervenors." *Id.* In that case, neither named party challenged the validity of the settlement agreement; thus we could not have granted "any

---

[8]To be clear, in the context of subject matter jurisdiction, our ability to grant relief speaks to our *power* to grant relief, not whether we should exercise that power. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (describing subject matter jurisdiction as "the courts' statutory or constitutional *power* to adjudicate the case"); 13 Charles Alan Wright et al., *Federal Practice and Procedure* § 3522, at 78-79 (2d ed. 1984) ("The jurisdiction of the federal courts is dependent on the subject matter of the action or the status of the parties to it; it is not dependent on the merits of the case. Thus a court may have subject matter jurisdiction over a case even though the action is one to which there is no merit.").

effectual relief whatsoever" to the parties without voiding the settlement itself, which neither party sought. In other words, the case was moot because neither party continued to seek a legally cognizable remedy that we had the power to grant. *See Hain*, 327 F.3d at 1180; *Smith*, 258 F.3d at 1179.

We do not face an analogous situation in this case. Instead of a third party seeking to prolong the life of a settled dispute, one of the parties is seeking to void the plea agreement—a legally cognizable remedy that we have the power to grant. Given this vital distinction, we find *Bhattacharya v. Copple*, 898 F.2d 766 (10th Cir. 1990) (per curiam), persuasive.

In *Bhattacharya*, the parties entered into a settlement agreement that expressly permitted the district court to award attorneys fees up to $450,000. *Id.* at 767. After the district court awarded fees of approximately $180,000, plaintiffs appealed, arguing that the award was less than the $450,000 contemplated in the agreement. *Id.* at 768. On appeal, the defendants argued that, given the settlement, the Court lacked subject matter jurisdiction to hear the appeal because the amount of the award did not "create a controversy between the parties." *Id.* We disagreed with the defendant's argument, held that we had subject matter jurisdiction, and affirmed the award. We reached these conclusions in light of the applicable state statute that permitted the court in its discretion to approve or disapprove of attorneys' fees. *Id.* at 768-69. Thus, we found that the allegations

of abuse of discretion survived the settlement agreement. *Id.* at 769.

We face a similar situation here. Mr. Hahn and the government entered into a plea agreement that required the district judge, pursuant to federal statute and the U.S. Sentencing Guidelines Manual, to determine the length of Mr. Hahn's sentence. *Compare id.* at 767 (parties entered into settlement whereby the district court, pursuant to Kansas statute, would determine the amount of attorneys' fees). Here, the district court determined the length of Mr. Hahn's sentence; and Mr. Hahn believes that this determination was made contrary to an implicit term of the plea agreement. *Compare id.* at 768 (plaintiff believed the award of attorneys' fees to be contrary to the terms of the settlement agreement). As in *Bhattacharya*, the district court's application of federal statutes and the Guidelines in sentencing survive the plea agreement itself for purposes of the mootness analysis.[9] *See id.* at 769. We hold, then, that an appeal challenging the enforceability of an appellate waiver is not moot because we have the power to afford the legally cognizable relief—voiding the plea—requested by a party. *See Hain*, 327 F.3d at 1180; *Smith*, 258 F.3d at 1179.

Therefore, we hold that this Court has both statutory and constitutional subject matter jurisdiction over appeals when a criminal defendant has waived his

_____

[9]We do not hold that erroneous application of federal statutes or the Sentencing Guidelines provide grounds for finding a waiver agreement unenforceable, only that we have jurisdiction to entertain such cases.

appellate rights in an enforceable plea agreement. To the extent that *United States v. Rubio*, 231 F.3d 709, 711 & n.1 (10th Cir. 2000), is inconsistent with this holding, we overrule it.

B.    Appellate Waiver Enforcement Analysis

Finding that we have subject matter jurisdiction to entertain this appeal, we next consider how we should resolve appeals brought by defendants who have waived their appellate rights in a plea agreement. In fashioning our analysis, we are guided by four principles. First, every circuit that has considered enforcement of appellate waivers enforces at least some forms of appellate waivers.[10] Second, contract principles govern plea agreements. *See, e.g., United States v. Rockwell Int'l Corp.*, 124 F.3d 1194, 1199 (10th Cir. 1997). Third, "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court." *Elliott*, 264 F.3d at 1173 (quotations omitted). Fourth, appellate waivers benefit the government by saving the costs of prosecuting appeals; and "[o]nly through the [efficient] dismissal of [an] appeal

---

[10]*See generally United States v. Teeter*, 257 F.3d 14, 21-27 (1st Cir. 2001); *United States v. Hernandez*, 242 F.3d 110, 113-14 (2d Cir. 2001); *United States v. Khattak*, 273 F.3d 557, 559-63 (3d Cir. 2001); *United States v. Brown*, 232 F.3d 399, 402-06 (4th Cir. 2000); *United States v. Melancon*, 972 F.2d 566, 567 (5th Cir. 1992); *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001); *United States v. Jemison*, 237 F.3d 911, 916-18 (7th Cir. 2001); *United States v. Andis*, 333 F.3d 886, 889 (8th Cir. 2003) (en banc); *United States v. Nguyen*, 235 F.3d 1179, 1182-84 (9th Cir. 2000); *United States v. Howle*, 166 F.3d 1166, 1168-69 (11th Cir. 1999).

will the government receive the benefit of its bargain." *Id.* at 1174 (quotations omitted). With these principles at hand, we adopt the following analysis and a new intra-Court procedure.

### 1. *Contract Analysis Tempered by Public Policy*

We find persuasive the Eighth Circuit's treatment of these principles and adopt, with slight variation, the three-prong analysis announced in *United States v. Andis*, 333 F.3d 886, 890-92 (8th Cir. 2003) (en banc). This analysis calls for the court of appeals, in reviewing appeals brought after a defendant has entered into an appeal waiver, to determine: (1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice as we define herein. *See id.*

### a. *Scope*

The first prong of the analysis requires the court to determine if the disputed appeal falls within the scope of the appellate waiver. *Id*. at 890; *see also United States v. Chavez-Salais*, 337 F.3d 1170, 1173 (10th Cir. 2003) (holding that a court will not enforce waivers of appellate rights beyond the scope of the plea agreement); *United States v. Atterberry*, 144 F.3d 1299, 1300 (10th Cir. 1998) ("This court will hold a defendant to the terms of a lawful plea agreement."). In determining a waiver's scope, we will "strictly construe[]

[appeal waivers] and any ambiguities in these agreements will be read against the Government and in favor of a defendant's appellate rights." *Andis*, 333 F.3d at 890; *see also Chavez-Salais*, 337 F.3d at 1173 ("Like most waivers, a defendant's waiver of his right to appeal . . . is to be construed narrowly.").

### b. Knowing and voluntary

The second prong of the analysis requires the court to ascertain whether the defendant knowingly and voluntarily waived his appellate rights. *Andis*, 333 F.3d at 890-91; *see also Elliott*, 264 F.3d at 1173. When determining whether a waiver of appellate rights is knowing and voluntary, we especially look to two factors. First, we examine whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily. *Elliott*, 264 F.3d at 1174 n.1 ("Indeed, the plea agreement, which he signed, stated that [the defendant] 'knowingly and expressly waive[d] the right' to appeal"). Second, we look for an adequate Federal Rule of Criminal Procedure 11 colloquy. *Andis*, 333 F.3d at 891; *Chavez-Salais*, 337 F.3d at 1173 ("The second way in which the content of a defendant's waiver of appeal rights can be made known to him is through the colloquy with the court required by Federal Rule of Criminal Procedure 11.").

Mr. Hahn and *amicus curiae*, the National Association of Criminal Defense Lawyers ("NACDL"), urge that, as a matter of law, a waiver of appellate

rights entered into prior to sentencing cannot be knowing and voluntary.[11]  They assert that in such cases a defendant can never knowingly and voluntarily waive his appellate rights because he cannot possibly know in advance what errors a district court might make in the process of arriving at an appropriate sentence.  In making their argument, Mr. Hahn and the NACDL rely mainly on *United States v. Melancon*, 972 F.2d 566, 571 (5th Cir. 1992) (Parker, J., concurring) ("I do not think that a defendant can ever knowingly and intelligently waive, as part of a plea agreement, the right to appeal a sentence that has yet to be imposed at the time he or she enters into the plea agreement; such a 'waiver' is inherently uninformed and unintelligent."); *United States v. Han*, 181 F. Supp. 2d 1039, 1042 (N.D. Cal. 2002) (same); *United States v. Raynor*, 989 F. Supp. 43, 44 (D.D.C. 1997) (same).  This argument does not persuade us.

Instead, we find persuasive the analyses of two circuits that have addressed and rejected the same argument presented by Mr. Hahn and the NACDL.  *See*

-----

[11] In his panel reply brief, Mr. Hahn specifically indicated that he was not attempting to invalidate the plea agreement on the ground that it was unknowing or involuntary.  Applt's Reply Br. at 1-2.  In his supplemental en banc brief, however, Mr. Hahn changed tack.  He noted generally that some courts and commentators have questioned whether a defendant can ever knowingly waive an appeal of unforeseen error, and then specifically asks this court to conclude that "the matter appealed is beyond the scope of the waiver, and that the waiver was not knowingly and intelligently entered into, and . . . grant Mr. Hahn the relief requested, both on the waiver and on the substantive grounds."  Applt's Supp. Br. at 17, 25.  We address the argument advanced in Mr. Hahn's supplemental brief.

*United States v. Teeter*, 257 F.3d 14, 21-23 (1st Cir. 2001); *United States v. Khattak*, 273 F.3d 557, 560-62 (3d Cir. 2001). In asserting that an appeal waiver can never be knowing and voluntary, Mr. Hahn and the NACDL improperly focus on the prospective result of the sentencing proceeding rather than the right relinquished. Illustrating the fault with this approach, the court in *Teeter* noted that the waiver of the right to appeal is no more prospective than the waiver of the right to trial by jury, which may be permissibly waived. *Id.* at 21 ("Although many. . . waivers [for criminal defendants] pertain to future events—a waiver of the right to trial by jury is a good example—their prospective nature has never been thought to place them off limits or to render the defendant's act 'unknowing.'"). It is true that when a defendant waives his right to appeal, he does not know with specificity what claims of error, if any, he is foregoing. Nevertheless, as the *Teeter* court reasoned, this fact has never rendered a defendant's guilty plea unknowing or involuntary. *Id.*; *Khattak*, 273 F.3d at 561 ("Waivers of the legal consequences of unknown future events are commonplace . . . . [and enforceable.]").[12]

_____

[12]Other circuits have highlighted the logical failings of focusing on the result of a proceeding, rather than on the right relinquished, in analyzing whether an appeal waiver is unknowing or involuntary. *See, e.g., United States v. Nguyen*, 235 F.3d 1179, 1184 (9th Cir. 2000) ("Under Nguyen's view, a waiver of appellate rights would be essentially meaningless; the waiver would be valid if the claims were meritless, but invalid if the claims were meritorious. The whole
(continued...)

-22-

The Supreme Court's recent decision in *United States v. Ruiz*, 536 U.S. 622 (2002), reinforces our conclusion. In *Ruiz*, the Court addressed the validity of a plea agreement in which the defendant waived the right to receive from the prosecutor exculpatory impeachment material and information relating to affirmative defenses that the defendant might raise at trial. *Id.* at 628, 633. In upholding such a waiver, the Court rejected any notion that a defendant must know with specificity the result he forfeits before his waiver is valid:

> [T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it. A defendant, for example, may waive his right to remain silent, his right to a jury trial, or his right to counsel even if the defendant does not know the specific questions the authorities intend to ask, who will likely serve on the jury, or the particular lawyer the State might otherwise provide. *Id.* at 629-30.

Therefore, we reject the notion that, as a matter of law, all presentencing waivers of appellate rights are unknowing and involuntary.

---

[12](...continued)
point of a waiver, however, is the relinquishment of claims *regardless* of their merit."); *United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999) ("A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues—indeed, it includes a waiver of the right to appeal blatant error. Waiver would be nearly meaningless if it included only those appeals that border on the frivolous. . . ."); *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995) ("Defendants who appeal from sentences following plea agreements *always* point to unanticipated and unwelcome developments. . . . To say that a waiver of appeal is effective if and only if the defendant lacks grounds for appeal is to say that waivers will not be honored.").

### c. *Miscarriage of Justice*

The third prong of our enforcement analysis requires the court to determine whether enforcing the waiver will result in a miscarriage of justice. *Andis*, 333 F.3d at 891; *Khattak*, 273 F.3d at 562-63; *Teeter*, 257 F.3d at 25. We find that, like the Eighth Circuit, "we have not previously defined this exception, [but] we have described many of its components." *Andis*, 333 F.3d at 891.

> Appellate waivers are subject to certain exceptions, including [1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful. *Elliott*, 264 F.3d at 1173 (citing *United States v. Cockerham*, 237 F.3d 1179, 1182 (10th Cir. 2001)).[13]

We hold that enforcement of an appellate waiver does not result in a miscarriage of justice unless enforcement would result in one of the four situations enumerated in *Elliott*. *See id.* We further hold that to satisfy the fourth *Elliott* factor—where the waiver is otherwise unlawful—"the error [must] seriously affect[] the fairness, integrity or public reputation of judicial proceedings[,]" as that test was employed in *United States v. Olano*, 507 U.S. 725, 732 (1993).

---

[13]Generally, we only consider ineffective assistance of counsel claims on collateral review. *See, e.g., United States v. Edgar*, 348 F.3d 867, 869 (10th Cir. 2003) ("Although it is well established that we will not enforce a waiver that is the product of ineffective assistance of counsel . . . . [w]ith rare exception, a defendant must raise ineffective assistance of counsel claims in a collateral proceeding, not on direct appeal.") (citation omitted). Our holding today does not disturb this longstanding rule.

### 2.    *Intra-Circuit Procedure*

As noted above, "[o]nly through the [efficient] dismissal of [an] appeal will the government receive the benefit of its [appellate waiver] bargain." *Elliot*, 264 F3.d at 1174 (quotation omitted).  Invariably, in cases such as this one, the government files a motion to dismiss the appeal after the defendant files his notice of appeal.  Our practice has been to defer ruling on the government's motion, refer the motion to the merits panel, and order the parties to brief the underlying merits of the case.  The government argues that this practice, in effect, robs it of the benefit of its bargain.  We agree.

To preserve the benefit of the government's bargain and employ our appellate waiver enforcement analysis, henceforth, when a defendant who has waived his appellate rights in a plea agreement files a notice of appeal and the government wishes to enforce this waiver, the government will file a "Motion for Enforcement of the Plea Agreement."  This motion will address the three-prong enforcement analysis provided above, but not the underlying merits of the defendant's appeal.  The defendant will then have the opportunity to respond. The Clerk of the Court will forward the government's motion, and any responding briefs, to the panel.  The parties will not be directed to brief the underlying merits of the defendant's appeal.

If the panel finds that the plea agreement is enforceable, it will summarily

-25-

dismiss the appeal. If the panel finds the plea agreement unenforceable, it will issue a ruling consistent with this finding. Currently, 10th Cir. R. 27.2(A)(1) allows only three types of dispositive motions. The approach outlined above requires the addition of a fourth type of motion. We will amend the rules accordingly.

C.    Application To Mr. Hahn's Appeal

We now apply the above-outlined three-prong enforcement analysis to Mr. Hahn's appeal, enforce Mr. Hahn's waiver, and dismiss.

*1.    Scope of Mr. Hahn's Waiver*

Mr. Hahn's current appeal falls within the scope of his waiver of appellate rights. Although we narrowly construe the scope of Mr. Hahn's waiver of appellate rights, *Chavez-Salais*, 337 F.3d at 1173, "[t]his court will hold a defendant to the terms of a lawful plea agreement[,]" *Atterberry*, 144 F.3d 1299, 1300 (10th Cir. 1998). Mr. Hahn signed a broad waiver of appellate rights. It states that he "knowingly waive[d] the right to appeal any sentence within the maximum provided in the statutes of conviction or the manner in the which that sentence was determined on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever." Mr. Hahn's argument—that the district court failed to recognize its discretion to impose the sentence in this case concurrently with the sentence in the marijuana-and-firearms

case—unambiguously falls within the scope of this waiver. Moreover, nothing in the record indicates that he retained the right to appeal this sentencing question.[14] We conclude, therefore, that this appeal falls within the scope of Mr. Hahn's waiver.

### 2. Knowing and Voluntariness of Mr. Hahn's Waiver

We only enforce appeal waivers that defendants enter into knowingly and voluntarily. *Elliott*, 264 F.3d at 1173. Here, absent the argument that all presentence waivers of appellate rights are not knowing and voluntary, which we rejected above, Mr. Hahn fails to provide support for the notion that he did not knowingly and voluntarily enter into his plea agreement. Mr. Hahn bears the burden on this score. *United States v. Edgar*, 348 F.3d 867, 872-73 (10th Cir. 2003) (defendant "has the burden to present evidence from the record establishing that he did not understand the waiver."). Therefore, we hold that Mr. Hahn entered into this agreement knowingly and voluntarily.

### 3. Miscarriage of Justice and Mr. Hahn's Waiver

We will enforce Mr. Hahn's appellate waiver unless we find that the enforcement of the waiver would constitute a miscarriage of justice. To

---

[14]Mr. Hahn does note that at the sentencing hearing his counsel indicated that he believed Mr. Hahn was entitled to appeal this question despite the appeal waiver. Nevertheless, these statements made after the entry of the appeal waiver and the district court's acceptance of the guilty plea cannot overcome the plain language of the appeal waiver.

constitute a miscarriage of justice, enforcement of Mr. Hahn's waiver must result in one of the four scenarios enumerated in *Elliot*. 264 F.3d at 1173. Moreover, to meet the fourth *Elliott* factor (i.e., enforcement of the waiver is otherwise unlawful) the alleged error must satisfy the fourth prong of the *Olano* plain error test. *See Olano*, 507 U.S. at 732 ("[T]he error [must] seriously affect[] the fairness, integrity or public reputation of judicial proceedings[.]") (internal citations omitted).

Here, the district court did not rely upon an impermissible factor such as race in sentencing Mr. Hahn. *See Elliot*, 264 F.3d at 1173. Mr. Hahn does not allege ineffective assistance of counsel in connection with the negotiation of the appellate waiver. *See id.* Mr. Hahn's sentence does not exceed the statutory maximum. *See id.* Finally, even if the district court's conclusion regarding its lack of sentencing discretion was in error, a determination that we need not reach here, this error does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See Olano*, 507 U.S. at 732; *Elliot*, 264 F.3d at 1173. Indeed, the district court's consecutive sentence is specifically allowed by 18 U.S.C. §§ 924(c) and 3584. Subjecting Mr. Hahn to a sentence sanctioned by Congress does not constitute an error seriously affecting the fairness, integrity, or public reputation of judicial proceedings. As such, we find that enforcing Mr. Hahn's waiver of appellate rights would not constitute a miscarriage of justice.

Because we are satisfied that the current appeal is within the scope of Mr. Hahn's waiver, that the waiver was knowing and voluntary, and that enforcing the waiver would not result in a miscarriage of justice, we enforce Mr. Hahn's waiver and dismiss this appeal.[15]

## IV. CONCLUSION

This Court retains subject matter jurisdiction over appeals filed after a criminal defendant signs an enforceable waiver of appellate rights. Although we retain subject matter jurisdiction, upon motion by the government, we will conduct the three-prong enforcement analysis discussed above. If we conclude that the waiver is unenforceable, we will issue a ruling consistent with this finding. If we conclude that the waiver agreement is enforceable, we will dismiss. Applying these principles here, we hold Mr. Hahn's waiver of appellate rights enforceable and DISMISS.

---

[15]In this case, the government moved to dismiss Mr. Hahn's appeal for lack of subject matter jurisdiction. We rejected this argument. Nevertheless, given that Mr. Hahn's waiver of appellate rights is enforceable, which precludes us from reaching the merits of this appeal, "this court has inherent authority, wholly aside from any statutory warrant, to dismiss [this] appeal . . . as frivolous [because] the appeal . . . presents no arguably meritorious issue for our consideration." *Pillay v. Immigration & Naturalization Serv.*, 45 F.3d 14, 17 (2d Cir. 1995) (per curiam).

No. 01-2301, *United States v. Hahn*

**LUCERO**, joined by **SEYMOUR** and **HENRY**, Circuit Judges, concurring in part, dissenting in part.

I join parts I, II, III.A and III.B of the per curiam opinion.

We resolve today the primary question on which en banc review was granted, that we have subject matter jurisdiction to consider challenges to enforceable waivers of appellate rights. My point of departure from the majority opinion, compelling my dissent, is my conclusion that the claim before us is reviewable because it falls outside the scope of Marcus Hahn's waiver of appeal. Upon review of the merits, I conclude that the district court unambiguously misapprehended its discretion in sentencing Hahn, and that its misapplication resulted in a sentence potentially five years greater than the one that could have been imposed. I would remand for resentencing in accordance with the corrected standard of discretion.

Let me turn first to the scope of the waiver. Hahn claims that the district court's misapprehension of its sentencing discretion is an allegation of error beyond the scope of his appeal waiver that we should consider. The majority predicates its rejection of Hahn's claim on its conclusion that Hahn intended to waive the right to appeal any sentence other than one beyond the statutory maximum and knowingly agreed to accept the chance he might be sentenced by a judge who was ignorant of his discretion to apply concurrent versus consecutive sentences under the relevant statutes.

This predicate leads to the majority's erroneous conclusion. Plea agreements and appeal waivers rest on the basic assumption that a sentencing court will correctly understand the statutory scheme and sentencing guidelines that are to be utilized in sentencing a defendant. We have carved out exceptions to the enforceability of appeal waivers, see, e.g., the Elliot factors, 264 F.3d at 1173, primarily because their use in sentencing cannot be reasonably supported by contract principles under which either party could be "deemed to have accepted such a risk or be entitled to such a result as a benefit of the bargain." See United States v. Yemitan, 70 F.3d 746, 748 (2d Cir. 1995) (explaining that a sentence tainted by racial bias is outside the scope of an appeal waiver). Just as a defendant who contracts for benefits in exchange for the waiver of appellate rights may reasonably presume the district court will not enter a sentence based on race or impose a sentence beyond the sentencing guidelines, so also may that defendant presume that the district court correctly understands its lawful statutory authority to impose a certain sentence. Cf. United States v. Broughton-Jones, 71 F.3d 1143, 1145, 1147 (4th Cir. 1995) (declining to enforce the defendant's appeal waiver when her sentence included a term of imprisonment and monetary restitution, on the grounds that imposition of restitution, like an upward departure, was outside the scope of the waiver).

Hahn alleges that the district court erroneously concluded that it lacked

-2-

discretion to impose the sexual-exploitation sentence concurrently with the marijuana-and-firearms sentence. Because the majority reasons that whether the district court misapprehended its own discretion to impose these sentences consecutively or concurrently was among the allegations of error that Hahn surrendered in his appeal waiver, it declines to address the strength of Hahn's arguments on appeal. I disagree. Although a mere allegation that the district court misapprehended the law would not justify an exception to our enforcement of an appeal waiver,[1] when a sentencing court clearly and unambiguously misunderstands its legal authority, and such misunderstanding potentially affects the sentence imposed, I would decide that we may—in fact, must—evaluate the merits of the defendant's arguments on appeal, notwithstanding his waiver of

---

[1]Absent unambiguous statements to the contrary, we presume that a district court was aware of its legal authority to impose a given sentence. See United States v. Fortier, 180 F.3d 1217, 1231 (10th Cir. 1999) ("[W]e treat ambiguous statements made by district judges as though the judge was aware of his or her legal authority to depart [from sentencing guidelines] but chose instead, in an exercise of discretion, not to depart."); United States v. Rodriguez, 30 F.3d 1318, 1319 (10th Cir. 1994) (determining that there is no appellate jurisdiction to review a sentence unless the sentencing court clearly misunderstands its authority to grant a downward departure). Notably, our resolution of such ambiguities in favor of the sentencing court is not in accord with several other circuits that have remanded for further clarification. See, e.g.,United States v. Smith, 278 F.3d 605, 611 (6th Cir. 2002); United States v. Powell, 269 F.3d 175, 179–180 (3rd Cir. 2001); United States v. Rojas-Millan, 234 F.3d 464, 474, 475 (9th Cir. 2000); United States v. Aramony, 166 F.3d 655, 665 (4th Cir. 1999); United States v. Vahovick, 160 F.3d 395, 398–399 (7th Cir. 1998); United States v. Graham, 83 F.3d 1466, 1481 (D.C. Cir. 1996).

-3-

appellate rights. A sentencing court's explicit misunderstanding of the existence of its legal power to impose a certain sentence is not only manifestly outside the scope of the parties' reasonable expectations in bargaining for an agreement that includes a waiver of appellate rights, but also contravenes basic public policy, which requires that a sentencing court correctly perceive its own legal authority. Consequently, if Hahn is correct that the district court had discretion to impose a concurrent sentence and explicitly misapprehended its lawful statutory authority, I would conclude that the government may not invoke Hahn's waiver of appellate rights to bar our consideration of the matter.

Turning to an analysis of the merits in the instant case, Hahn argues that the district court clearly and unambiguously misapprehended its own discretion to impose Hahn's sexual-exploitation sentence concurrently with his marijuana-and-firearms sentence. Generally, a district court retains discretion to impose sentences concurrently or consecutively. 18 U.S.C. § 3584; United States v. Contreras, 210 F.3d 1151, 1152 (10th Cir. 2000); United States v. McCarty, 82 F.3d 943, 950 (10th Cir. 1996). Section 924(c), however, carves out an exception to this rule, providing that for a defendant convicted of possessing a firearm in furtherance of a drug-trafficking crime, "no term of imprisonment imposed . . . shall run concurrently with any other term of imprisonment imposed on the person." 18 U.S.C. § 924(c)(1)(D)(ii).

The district court interpreted § 924(c)(1)(D)(ii) to prohibit the imposition of concurrent sentences in Hahn's case and thus clearly and unambiguously ruled that it had no discretion to impose the sexual-exploitation sentence concurrently with the marijuana-and-firearms sentence. For example, during the sentencing hearing, the court stated:

> The first [issue] involves whether the sentence that will be imposed in this [sexual-exploitation] case must be ordered to run consecutively to the sentence that was imposed with [the marijuana-and-firearm case]. After reviewing all of the relevant law and the parties' briefs on the case, it's my conclusion that <u>I have no alternative but to order that it be imposed as a consecutive sentence</u>.

(2 Appellant's App. at 44 (emphasis added).) Similarly, in its written order, the court found: "The sentence in [the sexual-exploitation] case must run consecutively to the sentence in [the marijuana-and-firearms case]. This conclusion is based on the plain language of 18 U.S.C. § 924(c)(1)(D), its legislative history . . . and the holding in <u>United States v. Gonzales</u>, 520 U.S. 1, 9-10 (1997)." (2 Appellant's App. at 34 (citation omitted).)

Moreover, defense counsel's statements at the sentencing hearing suggest that the district court may have been inclined to impose the sexual-exploitation sentence to run concurrently with the marijuana-and-firearms sentences, had it perceived its discretion to do so: "I understand Your Honor feels that you are required by law to impose this amount of time. You indicated on June 6 that it would have been your intention, had you not been convinced that you must run

-5-

the sentence consecutively, that 40 years was a sufficient sentence." (2 Appellant's App. at 80.) Even setting defense counsel's statement aside, the court's unequivocal statements demonstrate that it clearly and unambiguously concluded that it had no discretion to impose a concurrent sentence as a matter of law.

As to Hahn's contention that the district court had discretion to impose the sexual-exploitation sentence concurrently with the portion of the marijuana-and-firearms sentence attributable to the two § 924(c) convictions, his argument fails. Under the plain language of § 924(c) and Supreme Court precedent, the district court correctly concluded that it did not have discretion to impose the sentence to run concurrently with the two firearms sentences. See United States v. Gonzales, 520 U.S. 1, 11 (1997) (holding that the plain language of § 924(c) prohibits a federal district court from imposing a term of imprisonment for a § 924(c) violation to run concurrently with any other sentence, whether it be a state or federal sentence). Although Hahn attempts to distinguish Gonzales by arguing that it does not apply to situations in which the § 924(c) conviction is imposed first, before the sentences for any other crimes are imposed—a scenario that the Supreme Court in Gonzales does not address—this interpretation does not comport with the plain language of the statute. See id. at 11. Section 924(c) provides that "no term of imprisonment imposed . . . shall run concurrently with

-6-

any other term of imprisonment imposed on the person," without exception. § 924(c)(1)(D)(ii) (emphasis added). Therefore, Hahn's arguments on this point have not demonstrated that the district court explicitly misunderstood its legal authority in interpreting § 924(c) to impose a certain sentence, nor has he demonstrated any of the other narrow exceptions under which we decline to enforce appeal waivers.

In my judgment, however, the district court erred in finding that it had no discretion to impose the sexual-exploitation sentence concurrently with the portion of the marijuana-and-firearms sentence attributable to the substantive marijuana convictions not arising under § 924(c). In Gonzales, although the district court imposed the sentences for the § 924(c) violations to run consecutively to defendants' state sentences and the other federal sentences, it permitted the federal non-firearms sentences to run concurrently with the state sentences. 520 U.S. at 3. The Supreme Court noted: "[§ 924(c)] does not . . . limit the court's authority to order that other federal sentences run concurrently with or consecutively to other prison terms—state or federal—under § 3584." 520 U.S. at 11. Accordingly, nothing in § 924(c) cabined the district court's discretion under § 3584 to order that the sexual-exploitation sentence run concurrently with the total five-year sentence for the substantive marijuana convictions.

During the sentencing hearing in the present case, the district court did not distinguish between the various components of the marijuana-and-firearms sentence when it concluded that it had "no alternative but to order" that the sexual-exploitation sentence run consecutively to it. (2 Appellant's App. at 44.) Therefore, when the district court assumed that it was required to impose the sexual-exploitation sentence consecutively to the § 924(c) firearms sentences as well as consecutively to the sentences for the substantive marijuana convictions under 21 U.S.C. §§ 841 and 856, it clearly misperceived its discretionary authority. Under § 3584, the district court retained discretion to impose the sexual-exploitation sentence to run concurrently with the five-year total sentence for the substantive marijuana convictions, which would permit it to impose a total sentence of approximately fifty-nine years rather than the sixty-four years ultimately imposed, a difference of approximately five years.

Remanding to the district court to allow it to decide whether it wished to exercise its lawful discretion to sentence Hahn concurrently would have obvious potential benefits to Hahn. Not as obviously, there would also be significant benefits for the public. Retaining defendant in prison for five years, if the district court did not intend to do so, is a costly proposition both financially and socially.

In summary, I would conclude that the trial court's misapprehension of its sentencing authority falls outside the scope of the plea agreement and is

reviewable.  I would also conclude that the trial court explicitly and wrongly determined that it lacked discretion with respect to the sentence for the substantive marijuana convictions.  On that basis, I would reverse and remand this case for resentencing, expressing no predisposition on the merits of the discretionary issue, but rather to uphold the general expectations of parties who enter plea agreements with appeal waivers that the result of such agreements will comport with basic principles of judicial fairness and our adjudicatory process.  I would otherwise affirm.

No. 01-2301, *United States v. Hahn*

**MURPHY**, Circuit Judge, joined by **KELLY**, **HARTZ**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges, dissenting.

## I.  INTRODUCTION

This court *sua sponte* set this case for initial en banc review, 28 U.S.C. § 28(c), and ordered the parties to brief the following question: Do we have subject matter jurisdiction to resolve a sentencing appeal when the parties have entered into a plea agreement with an appeal waiver clause?  Although it may seem mundane and purely technical to some, this question goes to the very foundation of our constitutional scheme.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) ("The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects."); *see also generally* Erwin Chemerinsky, Federal Jurisdiction § 2.1 (4th 3d. 2003) (emphasizing importance of justiciability doctrines in maintaining separation of powers, preserving judicial resources, improving judicial decision-making, and promoting fairness).

In an opinion that seems to resolve the question of Article III jurisdiction too easily, the majority first holds that this appeal continues to present the court with a justiciable case or controversy because this court has "the power to grant a legally cognizable remedy requested by a party—namely, voiding the plea

agreement." Majority Op. at 14-15. In an apparent disconnect from this jurisdictional basis, however, the majority then proceeds to the question whether this court should exercise its discretion to take up the merits of Hahn's sentencing appeal, *after having already concluded that Hahn knowingly and voluntarily entered into a valid waiver of appellate rights and that the matter Hahn seeks to appeal falls within the scope of that waiver*. Majority Op. at 25-28.

Because a valid waiver of appellate rights settles a sentencing dispute, thereby rendering nonjusticiable all matters within the scope of the waiver, the majority is incorrect in holding that this court has jurisdiction over the merits of Hahn's sentencing appeal. More specifically, the majority's determination that this case is generally justiciable because this court has the power to void the plea agreement is incorrect. Instead, as set out in this court's existing precedents, questions regarding the validity and scope of an appeal waiver are evaluated pursuant to this court's inherent jurisdiction to determine its own jurisdiction. Once that analysis is complete and it is determined that the appeal waiver is valid and the matter sought to be appealed is within the parameters of the waiver, the merits of the sentencing appeal must be dismissed as moot. Within this framework, rather than the one employed by the majority, Hahn's appeal waiver was knowingly and voluntarily entered as part of his plea agreement and the matter sought to be appealed falls within the scope of the waiver. Thus, Hahn's

sentencing appeal is moot and this case should be dismissed for lack of Article III jurisdiction.

## II. ANALYSIS

A. *A Valid Appeal Waiver Deprives this Court of Jurisdiction Over All Matters Within the Scope of the Waiver*

*1. Article III Jurisdiction*

In *United States v. Rubio*, 231 F.3d 709 (10th Cir. 2000), the defendant pleaded guilty to conspiring to traffic in methamphetamine; he entered into a plea agreement containing the following waiver of appellate rights: "The Defendant agrees to waive his right to appeal the sentence he receives as a result of this Plea Agreement." *Id.* at 711 (quotation omitted). When the district court denied him a downward adjustment to his offense level under the United States Sentencing Guidelines for a mitigating role in the offense, the defendant appealed. Noting the existence of the waiver of appellate rights, the *Rubio* panel began by explaining that this court "would certainly overreach [its] jurisdiction to entertain this appeal [if] the plea agreement deprived Defendant of the right to appeal." *Id.* To emphasize this point, the *Rubio* panel concluded that it must address the issue despite the government's failure to raise it in a timely manner "because we have an independent obligation to examine our subject matter jurisdiction." *Id.* at 711 n.1; *see also id.* ("The Government may properly argue the waiver provision is a

complete bar to Defendant's appeal, deprives us of jurisdiction, and requires dismissal."). Nevertheless, the *Rubio* panel held that this court always has "jurisdiction to determine [its own] jurisdiction." *Id.* at 711. Accordingly, "[t]o avoid dismissal of his appeal," the burden was on the defendant to "show why [this court] should not enforce the waiver provision of the plea agreement." *Id.*

The court in this case ordered initial en banc consideration to determine the continuing viability of *Rubio*'s holding that a waiver of appellate rights deprives this court of subject matter jurisdiction over sentencing appeals. *Id.* The majority proceeds to overrule *Rubio* and replace it with the following one-size-fits-all rule: "[W]e hold that this Court has both statutory and constitutional subject matter jurisdiction over appeals when a criminal defendant has waived his appellate rights in an enforceable plea agreement." Majority Op. at 17. Having determined that valid appeal waivers do not implicate this court's subject matter jurisdiction, the majority then moves on to adopt a "contract analysis tempered by public policy" to determine whether to enforce an appellate waiver. *Id.* at 18-25. The problem with the majority opinion is three-fold: (1) the majority offers no rationale at all for treating settlement agreements in the criminal context differently than settlement agreements in the civil context; (2) the majority's assertion that the merits of Hahn's sentencing appeal are justiciable simply because the court could choose to void the appeal waiver is not supported by

applicable precedent; and (3) the majority's one-size-fits-all rule is untethered from its jurisdictional rationale in this case and, furthermore, simply will not apply in every case.

Unfortunately, the majority rejects the government's equation of appeal waivers in criminal cases to settlement agreements in civil cases with almost no analysis of the underlying basis for plea agreements. *See* Majority Op. at 13-14. This is odd for at least the following two reasons. First, plea agreements and the promises contained therein, just like settlement agreements, are governed by contract principles. *United States v. Rockwell Int'l Corp.*, 124 F.3d 1194, 1199 (10th Cir. 1997); *United States v. Cooper*, 70 F.3d 563, 565 (10th Cir. 1995). Second, the very foundation of the analytical model adopted by the majority is the determination that appeal waivers must be evaluated pursuant to a contract analysis. Majority Op. at 18-19.

A waiver of appellate rights is a contract between the defendant and the government, for due consideration, to either completely or partially settle all sentencing matters by submission to the district court for a final, binding determination. In this case, for instance, Hahn agreed to plead guilty to counts three, four, five, six, fifteen, and sixteen of the indictment; to plead no contest to count fourteen of the indictment; and to waive the right to appeal any sentence imposed by the district court within the maximum provided in the statutes of

-5-

conviction. In exchange, the government stipulated that Hahn had clearly demonstrated an affirmative acceptance of responsibility for his criminal conduct for purposes of a downward adjustment under U.S.S.G. § 3E1.1 and agreed to dismiss all remaining counts of the indictment at the time of sentencing.

"With limited exceptions, a settlement involving all parties and all claims moots an action." *Tosco Corp. v. Hodel*, 804 F.2d 590, 592 (10th Cir. 1986) (citing 13A Charles Alan Wright et al., *Federal Practice and Procedure* § 3533.2, at 233 (2d ed. 1984) [hereinafter "Wright & Miller"]). "This principle applies to all final settlement agreements even if they contain executory terms." *Id.* Likewise, when the parties enter into a partial settlement encompassing specific issues, no live case or controversy remains as to those specific issues. *See* 13A Wright & Miller § 3533.2, at 234 ("A partial settlement moots the issues involved in the settlement, but not those that the parties did not intend to settle.").

The power of the federal judiciary to act is specifically limited to live cases or controversies between the parties to the litigation. U.S. Const. art III, § 2. The "irreducible constitutional minimum of standing" has three requirements: injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "This triad . . . constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co.*, 523 U.S. at 103-04 (footnote

omitted).  "[M]ootness [is] the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quotation omitted).

An appellant who has either partially or completely waived his right to appeal in exchange for concessions on the part of the government does not suffer an injury in fact within the meaning of Article III as to any matter within the scope of the appeal waiver.  Although a genuine dispute existed between the parties at all points until the entry of the guilty plea, the dispute was settled by the defendant's entry into the plea agreement.  *Cf.* 13A Wright & Miller § 3533.2, at 231 ("Mootness problems arise from a wide array of circumstances in which the plaintiff has secured the requested relief by some means other than final decision of the litigation, or has abandoned the quest.").  A defendant who has waived his appeal rights is contractually bound to accept the determinations made by the district court following a sentencing hearing and, as long as that contract is valid, any opinion by this court would merely be advisory.[1]  *Id.* § 3533.2, at 234

---

[1]The majority's reliance on *Bhattacharya v. Copple*, 898 F.2d 766 (10th Cir. 1990) (per curiam), to support its conclusion that Hahn's sentencing appeal is justiciable is odd.  *See* Majority Op. at 16-17.  Contrary to the majority's assertion, *Bhattacharya* did not hold that a case or controversy continued to exist despite the settlement agreement merely because a state statute permitted the trial court to exercise discretion in the awarding of attorneys' fees.  *Id.* at 17.  Instead,
(continued...)

-7-

[1](...continued)
the court in *Bhattacharya* undertook an analysis of the scope of the settlement agreement and concluded that the parties specifically intended to incorporate the provisions of the applicable state statute, including the right to appeal, into the settlement agreement. 898 F.2d at 768-69. In fact, the scope analysis undertaken in *Bhattacharya* specifically recognizes that had the parties intended to give the district court unfettered discretion in deciding on the award of attorneys' fees, the case would not be justiciable:

> The settlement agreement must be interpreted in light of § 7-121b, which empowers a court to approve or disapprove any attorneys' fees paid by a litigant in a medical malpractice action. Obviously, if a court disapproves, under § 7-121b, of the amount of attorneys' fees to be paid by a litigant, that is an adverse determination which is reviewable. Given the district court's role in this case under § 7-121b, the attorneys' fees provision of the settlement agreement must be read as contemplating that role and merely suggesting $450,000.00 as reasonable attorneys' fees, but not agreeing in advance to the district court's ultimate determination under § 7-121b. We simply are not persuaded that the attorneys' fees provision of the settlement agreement contains any expression of intent to convert the district court into an arbitrator or umpire whose determination with respect to attorneys' fees was agreed to in advance by the parties. Instead, the settlement agreement recognized the independent determination the district court was required to make under § 7-121b. The determination ultimately made was adverse to plaintiffs' attorneys. Under these circumstances, there is an appealable judgment, and the merits of the arguments raised by plaintiffs' attorneys will be reached on appeal.

*Id.* Unlike in *Bhattacharya*, the parties in this case did specifically contemplate and intend to vest the determination of sentencing questions, like the merits issue in this case, exclusively in the district court. *See* Majority Op. at 26 ("Mr. Hahn's argument—that the district court failed to recognize its discretion to impose the sentence in this case concurrently with the sentence in the marijuana-and-firearms case—unambiguously falls within the scope of this waiver. Moreover, nothing in the record indicates that he retained the right to appeal this sentencing question."). Accordingly, in contrast to the majority's assertions, *Bhattacharya* actually supports the conclusion that the merits of Hahn's sentencing appeal are

(continued...)

-8-

("[M]ootness questions should be answered according to the intent of the parties and more general contract principles.").[2]  Thus, a defendant like Hahn who has waived his appellate rights is not aggrieved in the Article III sense by an adverse ruling at sentencing; that is the exact risk he accepted when he entered into the appeal waiver.

Because the majority cites no support for its implicit assertion that criminal settlements are somehow different in effect than civil settlements when it comes to the question of mootness, it is forced to rely solely on *Sibron v. New York*, 392 U.S. 40 (1968), for the broad proposition that "this case is not moot because we have the power to grant a legally cognizable remedy requested by a party—namely, voiding the plea agreement."  Majority Op. at 14-15.  As this court's opinion in *Rubio* made clear, this court always has "jurisdiction to determine [its] own jurisdiction."  231 F.3d at 711.  Accordingly, in an

[1](...continued)
moot.

[2]For this reason, it seems odd for the majority to assert that *Rubio* is inconsistent with this court's decision in *United States v. Black*, 201 F.3d 1296, 1301 (10th Cir. 2000).  *See* Majority Op. at 4.  The use of contract principles in *Black* to determine whether a live dispute existed between the parties was perfectly consonant with the determination in *Rubio* that an otherwise valid appeal waiver deprives this court of subject matter jurisdiction over all issues within the scope of the waiver.  Furthermore, as set out more fully below, merely because this court will closely scrutinize an appeal waiver to make sure that it is not void as against public policy does not mean that a valid waiver, like the one at issue here, does not render nonjusticiable all matters within the scope of the agreement.

appropriate case, as set out more fully below, it may be necessary to analyze whether the plea agreement is invalid and whether the matter sought to be appealed is within the scope of the waiver in order to determine whether a particular appeal presents a justiciable case or controversy and thus invokes this court's jurisdiction. The mere fact that one or more aspects of a case are justiciable does not mean, however, that all aspects of the case are justiciable. *See Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1271, 1277 n.4 (10th Cir. 2002) (holding that although plaintiff's claims for damages were not moot, their claims for injunctive relief were moot); *Smith v. Plati*, 258 F.3d 1167, 1179 (10th Cir. 2001) ("An *issue* becomes moot when it becomes impossible for the court to grant any effectual relief whatsoever *on that issue* to a prevailing party." (quotation omitted) (emphasis added)).

This court's decision in *Smith* is particularly instructive. In *Smith*, the plaintiff filed a complaint in state court alleging that the defendants had violated both his First Amendment rights and state law. 258 F.3d at 1172-73. After the defendants removed the case to federal court, the plaintiff commenced a virtually identical action in state court, omitting the federal claims so that the action could not be removed to federal court. *Id.* After discovering the parallel state action, the district court ordered the plaintiff to dismiss it. *Id.* at 1173. The district court then dismissed the plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6). *Id.* On appeal, the plaintiff asserted that the district court had erred in dismissing his First Amendment claims and in ordering him to dismiss the parallel state action. *Id.* This court affirmed the dismissal of the plaintiff's First Amendment claims and then concluded that the merits resolution mooted the plaintiff's appeal of the district court's order that plaintiff dismiss his parallel state action. *Id.* at 1179. According to the court

> [Defendant] objects that the district court erred when it ordered him to dismiss the state court action which asserted virtually identical claims. Given that we affirm the dismissal of [defendant's] substantive claims, we hold that the issue is moot. An issue becomes moot when it becomes impossible for the court to grant "any effectual relief whatsoever" on that issue to a prevailing party.
> [Defendant] had an opportunity to fully and fairly litigate the state law claims in federal district court and to raise those issues on appeal. Those claims are now disposed of and any subsequent litigation would be barred by res judicata.

Id. (citations omitted).

As *Smith* makes clear, the mere fact that some aspect of a case is justiciable does not mean that all aspects of that case are justiciable. Like in *Smith*, the conclusion embraced by the majority that Hahn's appeal waiver is valid and that the substantive sentencing matter sought to be appealed is within the scope of the waiver, deprives this court of the ability to grant Hahn any effective relief as to his sentencing appeal. The proper course, then, is to dismiss Hahn's sentencing appeal as moot. The majority's contrary determination—that the entire case is

-11-

justiciable because the court could hypothetically grant Hahn's request to void the plea agreement—simply finds no support in the cases cited by the majority.[3]

Upon ruling that this entire appeal is justiciable simply because this court could void the plea agreement, the majority then takes a giant step beyond in announcing a broad jurisdictional rule unrestricted by the facts of this case. The

---

[3]Nor does the Supreme Court's decision in *Sibron v. New York*, 392 U.S. 40 (1968), support the majority's conclusion that this case is generally justiciable because this court could possibly void the plea agreement. In *Sibron*, the defendant pleaded guilty in New York state court to possession of heroin, but expressly preserved his right to appeal the trial court's denial of his motion to suppress the heroin. *Id.* at 44-45. Before his appeal could be decided by the Supreme Court, the defendant's sentence expired. *Id.* at 50. In rejecting the contention that the appeal was mooted by the expiration of the defendant's sentence, the Court concluded that because criminal convictions are presumed to entail collateral legal consequences, and because those consequences would be eliminated by a ruling in the defendant's favor, the appeal was not moot. *Id.* at 54-58. It must be noted that in *Sibron* the "'possibility'" that preserved the case from the "'limbo of mootness,'" Majority Op. at 15 (quoting *Sibron*, 392 U.S. at 55), was the possibility that the defendant would suffer some consequence in the future flowing from the conviction. *See generally Spencer v. Kemna*, 523 U.S. 1, 8-14 (1998) (discussing *Sibron* and noting that its presumption of collateral consequences would not be expanded beyond the narrow confines of that case).

Unlike the defendant in *Sibron* who preserved his right to appeal the adverse suppression ruling before entering into the guilty plea, Hahn specifically contracted away his right to challenge the sentence handed down by the district court. Thus, although the consequences of the district court's sentencing ruling are direct, Hahn is not aggrieved by them in the Article III sense because he received the very thing he bargained for: he received the benefits of a three-point reduction in his base offense level and the dismissal of several counts of the indictment in exchange for agreeing to have the district court be the final arbiter of any sentencing disputes. In order to reach the merits of Hahn's sentencing appeal, this court must first determine that the plea agreement, and hence the appeal waiver, is invalid. Having concluded otherwise, Hahn's sentencing appeal is moot. *Sibron* is not to the contrary.

majority repeats on two occasions that "an appeal challenging the enforceability of an appellate waiver is not moot because we have the power to afford the legally cognizable relief—voiding the plea—requested by a party." Majority Op. at 17; *see also id.* at 14-15. Unfortunately, the majority then states a broad jurisdictional holding untethered from this rationale: "[W]e hold that this Court has both statutory and constitutional subject matter jurisdiction over appeals when a criminal defendant has waived his appellate rights in an *enforceable plea agreement*." *Id.* at 17 (emphasis added). The majority's broad, concluding assertion that it has jurisdiction over all sentencing appeals involving an "enforceable" plea agreement simply cannot be squared with its underlying assertion that this appeal is justiciable because, and only because, this court can afford Hahn a remedy that he specifically requested—the voiding of his plea agreement. It is unlikely that every defendant seeking to appeal a district court sentencing decision in the face of an appeal waiver will assert that the plea agreement is invalid. In such cases, under the majority's own rationale, the appeal should not be justiciable because no party has requested that the plea agreement be voided. *See* Majority Op. at 15, 18; *see also id.* at 15 (distinguishing *Tosco* on the following ground: "In that case, neither named party challenged the validity of the settlement agreement; thus we could not have granted 'any effectual relief whatsoever' to the parties without voiding the

settlement itself, which neither party sought.").[4]  Thus, the majority has

compounded its error in asserting that all aspects of this appeal are justiciable

merely because one aspect of the appeal is justiciable by concluding its

jurisdictional analysis with an exceedingly expansive assertion of jurisdiction

untethered from its underlying rationale.

---

[4]In fact, Hahn's own arguments in this regard have presented this court
with a moving target.  In his three-judge panel reply brief, Hahn specifically
indicated that he was not attempting to invalidate the plea agreement on the
ground that it was unknowing or involuntary.  Hahn Reply Br. at 1-2 (noting that
in its response brief the government had anticipated an argument by Hahn that the
appeal waiver was not knowing and voluntary, labeling the government's
argument as the interposition of a "straw m[a]n," and affirmatively noting that he
"does not seek to withdraw his plea").  Although Hahn did state in passing in his
panel reply brief that the appeal waiver was not knowing and voluntary to the
extent it would prohibit this particular appeal, his arguments were clearly directed
to the scope of the appeal waiver rather than its validity.  *Id.* at 4 ("Here, it was
clear from the record that Mr. Hahn had not contemplated waiving his right to
appeal the district court's incorrect interpretation of the law as requiring that the
sentence in this case be imposed consecutively to a previous, unrelated case.
Thus, at least as to that aspect of the district court's sentencing order, Mr. Hahn's
waiver cannot be said to have been knowing and voluntary." (record citation
omitted)).

In his supplemental *en banc* brief, however, Hahn appears to have changed
tack.  He notes generally that some courts and commentators have questioned
whether a defendant can ever knowingly waive an appeal of unforeseen error, and
then specifically asks this court to conclude that "the matter appealed is beyond
the scope of the waiver, and that the waiver was not knowingly and intelligently
entered into, and . . . grant Mr. Hahn the relief requested, both on the waiver and
on the substantive grounds."  Hahn Supp. Br. at 17, 25.  In light of this language
in Hahn's supplemental *en banc* brief, the majority chooses to address the
question whether Hahn's appeal waiver was knowingly entered.  Under the
majority's jurisdictional rationale, this procedural history creates an interesting
question: Was the case as presented to the three-judge panel justiciable?

*2. Statutory jurisdiction*

The conclusion of this dissent that a valid waiver of appellate rights moots a sentencing dispute, thereby rendering nonjusticiable all matters within the scope of the waiver, makes it unnecessary to analyze whether such waivers have any impact on this court's statutory authority under 18 U.S.C. § 3742 to review district court sentencing decisions. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 584-85 (1999) (holding "that there is no unyielding jurisdictional hierarchy" mandating that questions of subject matter jurisdiction be resolved before questions of personal jurisdiction); *Boyce v. Ashcroft*, 268 F.3d 953, 955 (10th Cir. 2001) (relying on *Ruhrgas* to hold that this court was entitled to dismiss case on Article III mootness grounds instead of determining whether district court had statutory authority to entertain 28 U.S.C. § 2241 petition). As a consequence, this dissent offers no view on this question. Nevertheless, it is important to note serious problems inherent in the majority's conclusion that it retains statutory jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, without regard to § 3742.

First, the majority's assertion that § 1291 continues to authorize sentencing appeals in the face of § 3742 is highly suspect in light of the Supreme Court's decision in *United States v. Ruiz*, 536 U.S. 622, 627-28 (2002). In *Ruiz*, the Court addressed the validity of a plea agreement in which the defendant waived the right

to receive from the prosecutor exculpatory impeachment material and information relating to affirmative defenses the defendant might raise at trial. *Id.* at 628, 633. Before addressing the merits of the defendant's contention, the Court noted "a question of statutory jurisdiction potentially blocks our consideration of the Ninth Circuit's constitutional holding." *Id.* at 626. After identifying § 3742 as the operative statutory basis for sentencing appeals, the Court noted that it only allowed sentencing appeals in four specific situations. *Id.* at 627. The Court further noted that only one of the specified categories was potentially applicable in the case: the defendant may file a notice of appeal if the sentence was imposed in violation of law. *Id.* According to the Court,

> Two quite different theories might support appellate jurisdiction pursuant to that provision. First, as the Court of Appeals recognized, if the District Court's sentencing decision rested on a mistaken belief that it lacked the legal power to grant a departure, the quoted provision would apply. 241 F.3d, at 1162, n.2. Our reading of the record, however, convinces us that the District Judge correctly understood that he had such discretion but decided not to exercise it. We therefore reject that basis for finding appellate jurisdiction. Second, if respondent's constitutional claim . . . were sound, her sentence would have been "imposed in violation of law." Thus, if she had prevailed on the merits, her victory would also have confirmed the jurisdiction of the Court of Appeals.
>
> Although we ultimately conclude that respondent's sentence was not "imposed in violation of law" and therefore that § 3742(a)(1) does not authorize an appeal in a case of this kind, it is familiar law that a federal court always has jurisdiction to determine its own jurisdiction. [*See United States v. Mine Workers*, 330 U.S. 258, 291 (1947)]. In order to make that determination, it was necessary for the Ninth Circuit to address the merits. We therefore hold that appellate jurisdiction was proper.

*Ruiz*, 536 U.S. at 627-28. It would be odd, indeed, for the Supreme Court to engage in this analysis if § 1291 provided the jurisdictional hook necessary for the federal appellate courts to take up sentencing appeals. Hence, *Ruiz* provides strong support for the notion that § 3742, the more specific jurisdictional statute, has supplanted § 1291, the general jurisdictional statute, *in the arena of sentencing appeals. See Edmond v. United States*, 520 U.S. 651, 657 (1997).[5]

The majority attempts to sidestep *Ruiz* by labeling the Court's jurisdictional discussion "dicta." Majority Op. at 9-10 n.4. In contrast to the majority's assertion, however, the Court specifically noted that it was necessary to undertake the jurisdictional analysis before it could reach the merits of the appeal. *Ruiz*, 536 U.S. at 626 ("[W]e note that a question of statutory jurisdiction potentially blocks our consideration of the Ninth Circuit's constitutional holding."). The Court then specifically concluded that because the Ninth Circuit had properly

---

[5]This is not to say, however, that § 3742 has repealed § 1291 by implication. As noted in the majority opinion, "'An implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter act covers the whole subject of the earlier one and is clearly intended as a substitute.'" Majority Op. at 11 (quoting *Branch v. Smith*, 123 S. Ct. 1429, 1441 (2003) (citations and quotations omitted)). Section 3742 is directed specifically to sentencing appeals and authorizes a level of sentencing review never previously available prior to the passage of the Sentencing Reform Act; section 1291 applies to civil appeals and to many types of appeals in criminal cases not involving sentencing. In these circumstances, the specific provision authorizing sentencing appeals controls over the general provision authorizing appeals from final orders in criminal and civil cases. *Edmond v. United States*, 520 U.S. 651, 657 (1997).

-17-

reached the merits of the sentencing appeal, jurisdiction was proper in the Supreme Court as well. *Id.* at 628 ("In order to make [its own jurisdictional determination], it was necessary for the Ninth Circuit to address the merits. We therefore hold that appellate jurisdiction was proper."). This required jurisdictional analysis is certainly not dicta. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 73 (1997) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it. And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it." (quotation and citations omitted) (alterations in original)).

Even assuming that § 1291 continues to operate as a source of statutory jurisdiction over sentencing appeals after the passage of § 3742, this conclusion provides the majority no traction. It is certainly true that prior to the enactment of 18 U.S.C. § 3742, sentencing appeals could be pursued under 28 U.S.C. § 1291. The scope of that review was, however, exceedingly narrow. *See Dorszynski v. United States*, 418 U.S. 424, 431 (1974) ("[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it was imposed, appellate review is at an end."). The majority nevertheless asserts that

review under § 1291 "include[s] an abuse of discretion review over sentencing errors." Majority Op. at 10. That statement is true only in the grossest sense. Courts, including this court, have uniformly held that, pursuant to § 1291, an appellate court is not entitled to vacate or modify a sentence unless the district court imposed a sentence above the statutory maximum, relied on materially incorrect information in arriving at a sentencing decision, or refused to exercise any discretion at all. *United States v. Hack*, 782 F.2d 862, 870 (10th Cir. 1986); *see also, e.g., United States v. Ready*, 82 F.3d 551, 555 (2d Cir. 1996) ("The right to appeal a criminal conviction and sentence is statutory. Prior to the passage of the Sentencing Reform Act of 1984 (the '1984 Act'), . . . criminal appeals were taken pursuant to 28 U.S.C. § 1291. . . . The right to appeal a sentence under § 1291 was limited to sentences that were imposed above statutory limits, that were the result of material misinformation, or that were based on a constitutionally impermissible factor."); *United States v. Abdul-Hamid*, 966 F.2d 1228, 1231 (7th Cir. 1992) ("Appellate review of sentences under pre-SRA law was extremely narrow: A sentence which is within the limits established by statute under which it is imposed will not be vacated upon review unless the sentencing judge relied upon improper considerations or unreliable information in exercising his discretion or failed to exercise any discretion at all in imposing the sentence." (quotation omitted)). In *Vasquez v. Cooper*, 862 F.2d 250, 255 & n.4 (10th Cir.

-19-

1988), this court specifically noted the exceedingly narrow nature of sentencing review under § 1291 and indicated that the narrowness of review was "particularly true regarding substantive review of a trial court's sentencing decision."

Unless a defendant is asserting that the district court handed down a sentence outside the statutory limits, relied on materially incorrect information in arriving at a sentence, or relied on an impermissible criterion, no relief under § 1291 is available. This leaves the court no room under § 1291 to correct the kind of Sentencing Guidelines errors that are likely to be raised in sentencing appeals after the passage of the Sentencing Reform Act. Only under § 3742 is such review available. Otherwise, there would have been no need for Congress to enact § 3742.

In sum, in attempting to avoid the difficult question of whether § 3742 provides jurisdiction to review a sentence when the defendant has waived appellate review, the majority has improperly minimized as dicta statements in *Ruiz* which could certainly be read to indicate that § 3742 is the exclusive statutory basis for sentencing appeals and disregarded an equally difficult question concerning the severely limited scope of review available under § 1291 in a situation like that present in this case.

*B.*    *Hahn's Appeal Waiver is Valid and the Matter He Seeks to Appeal is Within the Scope of the Waiver*

This dissent's conclusion that a valid appeal waiver deprives this court of subject matter jurisdiction to adjudicate all matters within the scope of the waiver is a beginning point rather than an ending point.  As set out in *Rubio*, this court always has jurisdiction to determine its own jurisdiction.  231 F.3d at 711.  In the context of an appeal waiver, as well as settlement agreements generally, the jurisdictional inquiry subsumes two questions.  First, is the appeal waiver valid?  *See* 13A Wright & Miller § 3533.2, at 235-36 ("[M]ootness of course should not result from an agreement that ought to be set aside.").  Second, is the matter which the appellant seeks to raise on appeal within the scope of the appeal waiver?  *Id* § 3533.2, at 234 ("A partial settlement moots the issues involved in the settlement, but not those that the parties did not intend to settle.").  *See generally Elliott*, 264 F.3d at 1174-75 (undertaking this two-pronged analysis and concluding both that the appeal waiver was valid and that the matter defendant sought to appeal fell "squarely within the language of the waiver provision").  The appropriate course is to subject Hahn's appeal to this analysis rather than to apply the enforcement analysis adopted by the majority.

*1.*    *Validity of Hahn's Appeal Waiver*

Hahn entered into a broad waiver of his appellate rights, giving up the right to appeal any sentence "within the maximum provided in the statutes of

conviction." Of course, such a waiver is valid and enforceable only if Hahn

entered into it knowingly and voluntarily.[6] *Elliott*, 264 F.3d at 1173; *Rubio*, 231

F.3d at 712. Although his briefing before this court is far from clear,[7] Hahn

appears to argue in his *en banc* supplemental brief that his appeal waiver is

invalid because he did not enter it knowingly and intelligently. Both *amicus*

*curiae* National Association of Criminal Defense Lawyers ("NACDL") and Hahn

assert that an appeal waiver can never be knowingly entered because the

defendant cannot possibly know in advance what errors a district court might

---

[6]In addition to holding that an appeal waiver is not valid unless the defendant's acceptance of the waiver is knowing and voluntary, this court indicated in *Elliott* the following:

> [A] defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court. Appellate waivers are subject to certain exceptions, including where the district court relied on an impermissible factor such as race, where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, where the sentence exceeds the statutory maximum, or where the waiver is otherwise unlawful.

264 F.3d at 1173 (quotation and citation omitted). Of course, it is beyond question that any appeal waiver which *explicitly* empowered the district court to utilize an impermissible criterion at sentencing, such as race, religion, or sex; to impose a sentence in excess of the statutory maximum; or precluded a defendant from asserting that the plea agreement was entered into without effective assistance of counsel, would be facially invalid. *Id.* Because, however, Hahn has not challenged the validity of his appeal waiver on any of these grounds, this court need not further delineate the parameters of these exceptions to the general rule that "[a] defendant's knowing and voluntary waiver of the statutory right to appeal his sentence is generally enforceable." *Id.*

[7]*See supra* n.4 (discussing evolving nature of Hahn's arguments on appeal).

-22-

make in the process of arriving at an appropriate sentence. For the reasons set out in the majority opinion, Hahn is incorrect in asserting that appeal waivers are inherently unknowing and involuntary. *See* Majority Op. at 21-23. Because Hahn has not offered any alternative reason to question the validity of his appeal waiver, this court should proceed to the question whether the particular issue Hahn seeks to appeal is within the scope of waiver.[8]

### 2. Scope of Hahn's Waiver

This court construes "a defendant's plea agreement according to contract principles and what the defendant reasonably understood when he entered his plea." *United States v. Chavez-Salais*, 337 F.3d 1170, 1172 (10th Cir. 2003) (quotation omitted). "Like most waivers, a defendant's waiver of his right to appeal . . . his sentence is to be construed narrowly." *Id.* at 1173. Furthermore, as with the interpretation of any contract, this court also applies the maxim that the agreement should be construed against its drafter, in this case the government. *United States v. Brye*, 146 F.3d 1207, 1210 (10th Cir. 1998). While the

---

[8]Hahn's challenge to the validity of his appeal waiver is limited to the narrow assertion that all such waivers are invalid as a matter of law because of their prospective nature. He does not challenge the validity of his particular appeal waiver on the basis that it was not, in fact, knowingly and voluntarily entered. Accordingly, it is unnecessary to consider whether such a claim can be raised on direct appeal or, instead, whether it must be raised in a 28 U.S.C. § 2255 proceeding after the defendant has developed the factual basis for such a claim.

majority's resolution that Hahn's sentencing appeal is within the scope of the waiver is correct, a more extensive analysis is necessary as part of the jurisdictional examination set out in this dissent.[9]

It is appropriate to begin by emphasizing the requirement that courts narrowly interpret plea agreements according to the reasonable understanding of the parties at the time the agreement was entered. This requirement seriously

---

[9]The majority's placement of the scope analysis in its three-prong enforcement analysis does, however, appear flawed. Resolution of whether an issue sought to be appealed is within the scope of an appeal waiver seems wholly unrelated to the validity, and hence enforceability, of an appeal waiver. Furthermore, the considerations identified by the majority in the miscarriage-of-justice prong of its "contract analysis tempered by public policy" are more appropriately and circumspectly considered as part of validity and scope components of an analysis of whether this court has jurisdiction over the merits of Hahn's sentencing appeal. The scope analysis set out in this dissent focuses exclusively on the parties' intent in entering into an appeal waiver, leaving this court little opportunity to rewrite a plea agreement to the benefit of a defendant who has waived his appellate rights. Under the miscarriage-of-justice prong of the majority's appellate waiver enforcement analysis, this court is empowered to relieve the defendant of his obligations under a plea agreement simply because the court feels that the consequences of a sentencing error on the part of the district court are too severe. The unfortunate consequence of the majority's approach is two-fold. First, it encourages defendants to appeal in cases in which they have executed an appeal waiver, hoping that this court will exercise its discretion to correct what the defendant inevitably views as an egregious sentencing error. Second, it discourages the government from entering into plea agreements containing appeal waivers because there is no guarantee that it will actually receive the benefit of the bargain it struck. The majority's utilization of a discretionary approach to the enforcement of appeal waivers and the adoption of a miscarriage-of-justice exception to the enforcement of waivers will ultimately discourage the use of appeal waivers, a resource that benefits defendants, the government, and society at large. *See United States v. Elliott*, 264 F.3d 1171, 1174 (10th Cir. 2001).

blunts the criticism that such waivers "could encourage a lawless district court to impose sentences in violation of the guidelines." *United States v. Raynor*, 989 F. Supp. 43, 45 (D.D.C. 1997) (quotation omitted). No defendant entering into an appeal waiver, even a broadly worded waiver like the one before the court in the instant case, could be said to reasonably understand that he is giving the district court license to utilize an impermissible criterion at sentencing, such as race, religion, or sex; to hand down a sentence in excess of the statutory maximum; or to refuse or fail to undertake a good faith effort to sentence the defendant pursuant to the Sentencing Guidelines and otherwise applicable law. *Cf. United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995) ("[A] sentence tainted by racial bias could not be supported on contract principles, since neither party can be deemed to have accepted such a risk or be entitled to such a result as a benefit of the bargain."); Melvin A. Eisenberg, *Mistake in Contract Law*, 91 Cal. L. Rev. 1573, 1628 (2003) ("[I]n contracting, as in other parts of life, some things go without saying. And a central characteristic of things that go without saying is—they are not said."). Although it is unnecessary in resolving this case to fully catalog the list of situations in the latter category where it could be said that the district court refused or failed to undertake a good faith effort to sentence the defendant pursuant to the Sentencing Guidelines and otherwise applicable law, the following is a nonexclusive example: the parties to an appeal waiver could not

reasonably anticipate that the district court would ignore binding Supreme Court or Tenth Circuit precedent identified by the defendant in arriving at an appropriate sentence under the Guidelines or otherwise applicable law.[10] Furthermore, as noted above, an appeal waiver that actually vested power in the district court to act in such a lawless fashion—through the use of an

_____

[10]To be clear, the term "binding precedent" means Supreme Court or Tenth Circuit precedent that *compels* a particular outcome. This overlay on the scope doctrine will not swallow appellate waivers. Unless it can be fairly said that a Supreme Court or Tenth Circuit decision dictates a particular result, a reasonable defendant entering into an appeal waiver has necessarily accepted the risk that the district court might decide the sentencing question, although anticipatory, erroneously and in a manner adverse to the defendant. In setting out the contours to this limitation on the scope of appeal waivers, the case law interpreting the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 provides a useful analogy. 28 U.S.C. § 2254(d)(1) provides that a federal court may not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the state court adjudication of the claim "resulted in a decision that was contrary to . . . clearly established Federal law, as determined by the Supreme Court." A state court's decision is "contrary to" clearly established Supreme Court precedent only if the court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if the court "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). This standard perfectly captures the reasonable expectations of the parties to an appeal waiver. The parties reasonably proceed with an understanding that the district court will faithfully apply the Sentencing Guidelines or otherwise applicable law in arriving at a defendant's sentence and, in so doing, will not reach a result that is "contrary to" binding Supreme Court or Tenth Circuit precedent. By the very nature of entering into the waiver, however, the defendant must also recognize that each sentencing proceeding is somewhat novel and typically requires the resolution of legal questions for which there is no binding precedent from either the Supreme Court or this court. In those circumstances, the defendant assumes the risk that the district court might very well reach an erroneous conclusion.

-26-

impermissible factor in sentencing, the imposition of a sentence above the statutory maximum, or the refusal to undertake a good faith effort to arrive at an appropriate sentence under the Guidelines or otherwise applicable law—would be facially void.

A reasonable defendant understands that arriving at a sentence under the Sentencing Guidelines and applicable statutes is a difficult technical endeavor subject to much dispute at the margins of binding precedent. Both the government and the defendant realize that they may come out on the short end of such a resource-consuming process. The government is willing to make sentencing concessions in order to increase certainty and decrease the expenditure of resources. The defendant is willing to concede appellate rights in order to increase certainty and receive a reduced sentence. In so doing, both parties must reasonably understand that the district court might well make erroneous factual findings and, in the absence of binding precedent identified by the defendant, erroneous legal rulings. As noted above, within these parameters, this bargained-for-exchange constitutes a valid waiver of a defendant's appellate rights. With these considerations in mind, it is appropriate to turn to the waiver in the instant case.

Hahn's scope argument is particularly narrow. Hahn asserts that the district court made two types of decisions at sentencing in this case. First, the district

court arrived at a Guidelines sentence of 292 months' imprisonment on the sexual exploitation charges. Hahn specifically concedes that any challenge to the district court's calculations in arriving at this sentence falls squarely within the scope of his appeal waiver. *See* Hahn Panel Reply Br. at 2. Second, the district court concluded that it was obligated to impose the sentence in the sexual exploitation case consecutively to the sentence previously imposed in the marijuana and firearms case. Hahn emphatically asserts that this decision is beyond the scope of the appeal waiver. *Id.* at 1-3. Hahn's argument that this second aspect of the district court's sentencing decision falls outside the scope of his appeal waiver is unconvincing.

The text of Hahn's appeal waiver is broad. Hahn "knowingly waive[d] the right to appeal any sentence within the maximum provided in the statutes of conviction or the manner in the which that sentence was determined on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever." Although the scope of this broad waiver must be read in light of the reasonable expectations of the parties as elucidated above, there is no suggestion in the record that the district court relied on an impermissible factor, imposed a sentence above the statutory maximum, or failed or refused to arrive at an appropriate sentence under the Sentencing Guidelines and otherwise applicable law. Instead, the question whether to impose the sentences in this case

consecutively to or concurrently with the marijuana and firearms case—or, for that matter, whether the district court has discretion to impose the sentence in this case concurrently with the sentence in the marijuana and firearms case—was simply one more contested matter that the district court was required to resolve at Hahn's sentencing hearing. There is absolutely nothing in the record to indicate that Hahn retained the right to appeal this particular sentencing question to the exclusion of all others.[11] Furthermore, as noted above in rejecting Hahn's and NACDL's assertions that appeal waivers can never be knowing and voluntary, it is not important that Hahn did not anticipate that this particular dispute would arise at sentencing. Instead, what is important is that Hahn understood the general parameters of the right he was surrendering. *Ruiz*, 536 U.S. at 629-30. Hahn's implicit invitation to define the scope of his appeal waiver by reference to the sentencing disputes that he actually anticipated must be rejected.

## III. CONCLUSION

The practical outcome of the majority opinion, i.e., prudential dismissal of the case leaving the sentence imposed by the district court intact, roughly

---

[11]Hahn does note that at the sentencing hearing his counsel indicated that he believed Hahn was entitled to appeal this question despite the appeal waiver. Nevertheless, these self-serving statements made after the entry of the appeal waiver and the district court's acceptance of the guilty plea cannot overcome the plain language of the appeal waiver.

corresponds to the practical outcome that would result from the analytical model advocated in this dissent. The differing approaches, however, are a consequence of principled differences in the consideration of the very essence of this court's constitutionally circumscribed power, Article III jurisdiction. Because Hahn's appeal waiver is valid and because the matter he seeks to appeal is squarely within the scope of that waiver, this appeal does not present the court with a justiciable case or controversy. Accordingly, Hahn's sentencing appeal should be dismissed for lack of jurisdiction. Because the majority concludes otherwise, I respectfully dissent.